UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BENCHMARK INTERNATIONAL CSSA, LLC,**

    Plaintiff,

v.                                            Case No. 8:24-cv-265-MSS-AAS

**GERARD BURDI, et al.,**

    Defendants.
_____/

## ORDER

    Benchmark International CSSA, LLC's (Benchmark) moves to compel Defendants Gerard Burdi (G. Burdi), Nicholas Burdi (N. Burdi), Gerard Burdi as Trustee of the Gerard L. Burdi Living Trust, Gerard Burdi as Trustee of the Gerard L. Burdi Small Business Trust 2018, Nicholas Burdi as Trustee of the Nicholas M. Burdi Living Trust, Nicholas Burdi as Trustee of the Nicholas M. Burdi Small Business Trust 2018, Track Unlimited, LLC (Track Unlimited), and Union Paving & Construction Co., Inc. (Union Paving) (collectively, the defendants) to produce documents responsive to Benchmark's Request for Production Nos. 1, 2, 6–14, 16, and 17. (Doc. 29). The defendants responded in opposition to Benchmark's motion to compel. (Doc. 33). After a hearing on the motion, the court took Benchmark's motion under advisement and ordered supplemental briefing, which was timely filed. (*See* Docs. 40, 41, 42).

1

I.     BACKGROUND

Plaintiff Benchmark filed this one count breach of contract action against the defendants. (Doc. 1). Defendants G. Burdi, N. Burdi, Union Paving, and Tracks Unlimited (collectively, the Client Signatories) entered into a brokerage agreement for Benchmark to market and facilitate the sale of the ownership interests and assets of Union Paving and Tracks Unlimited, made as December 22, 2021, and amended February 23, 2022 (the Agreement). (Doc. 1-1, ¶ 18). In August 2023, the defendants informed Benchmark that a "change of ownership" occurred within Track Unlimited and Union Paving wherein, N. Burdi's ownership interests were "bought out" by his nephew, Kyle Burdi (K. Burdi), via an exchange of "promissory notes." (*See* Doc. 17-6, p. 2; Doc. 17-7, p. 7).

Under the Agreement, upon the closing of a "Transaction," Benchmark is entitled to various documentation and accountings, as well as a potential "Transaction Fee," the value of which depends on the "Transaction Value" received by the Client Signatories. (*See* Doc. 1-1, pp. 18–21). The Agreement defines "Transaction" as the "the alienation to any party . . . by one or more of the Client Signatories or other owners of the Business of title to or beneficial interest (whether held directly or indirectly by such Client Signatory(ies))" to "any party, regardless of how or by whom procured." (*See Id.*, p. 19, § 5(d)).

Benchmark alleges the "buy-out" from N. Burdi to K. Burdi falls within the term "Transaction" as defined by the Agreement. As a result, Benchmark alleges it is entitled to various documentation and accountings (those documents at issue in Benchmark's Request for Production Nos. 1, 2, 6–14, 16, 17) concerning the defendants' intra-family estate planning transfer of equity interests between/among direct and indirect owners of Tracks Unlimited and Union Paving. (Doc. 29). The defendants, in turn, assert the August 2023 "buy out" of N. Burdi's equity interests in Tracks Unlimited and Union Paving did not constitute a "Transaction" under the Agreement because estate planning by changing ownership percentages of Tracks Unlimited and Union Paving cannot constitute a "Transaction." (Doc. 33). The defendants also argue the production of these documents should not be requested in discovery or subject to a motion to compel because Benchmark only would be entitled to the requested documents if the court found in Benchmark's favor on its breach of contract claim. (*Id.*).

At the hearing on the Benchmark's motion to compel, the defendants argued Benchmark's inaccurate responses to the defendants' request for admissions impacted Benchmark's document requests. The court took Benchmark's motion under advisement and directed that the parties file supplemental memoranda "addressing how the [request for admissions]

responses impact this discovery dispute." (Doc. 40, ¶ 3). The defendants filed their memorandum and Benchmark replied.[1] (Docs. 41, 42).

## II.   ANALYSIS

A party is entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* A party may move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37. "The district court has broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).

Benchmark's one count complaint for breach of contract alleges the defendants "materially breached" the Agreement by: (1) declining to provide Benchmark with copies of all draft and final agreements exchanged related to the Transaction; and (2) declining to provide Benchmark with a full accounting and all additional data required for Benchmark to calculate the full value of the Transaction Fee. (Doc. 1-1, ¶ 46). Similarly, Benchmark's Request for Production Nos. 1, 2, 6–14, 16, 17 request documents "related to the

---

[1] The defendants also filed a notice of supplemental authority. (*See* Doc. 45).

Transaction" as well as a "full accounting and all additional data," which are the threshold issues in Benchmark's complaint.

Under the terms of the Agreement: (1) Benchmark is entitled to documents and information solely "[i]n the event Client elects not to fully involve Benchmark International in the matters leading up to the closing of a Transaction" (Doc. 1-1, Ex. A § 5(e)(iii)); (2) if Benchmark has "reason to believe that a Transaction Fee is due" Benchmark is "entitled to a written accounting from each Client Signatory" (Doc. 1-1, Ex. A § 5(e)(iii)); (3) and the capitalized term Transaction Fee is defined in Section 3 of the Agreement as "upon closing of a Transaction, a success fee." (*Id.*, § 3). However, in Benchmark's responses to the defendants' Request for Admissions:

- Benchmark denied that Section 5(e)(iii) requires the closing of a Transaction prior to being provided with documents from the defendants;

- Benchmark admitted it is entitled to an accounting under Section 6(d) of the Agreement if a Transaction occurred, not if a Transaction closed or a Transaction Fee is due;

- Benchmark denied that the Agreement provides that a "Transaction Fee" is a "success fee" "upon closing of a Transaction";

- Benchmark denied that under the Agreement, a "Transaction" must close and not just occur before a "Transaction Fee" could become due to Benchmark; and

- Benchmark denied that it only could have reason to believe a "Transaction Fee" is due if a "Transaction" closed under the Agreement.

(Doc. 41-1, pp. 1–3).

5

Benchmark concedes that it "sued [the d]efendants to obtain, among other things, an accounting and documentation from [the d]efendants to establish that a 'Transaction' occurred," and that "some of the documents and information Benchmark seeks in discovery may overlap with some of Benchmark's requested relief." (Doc. 29, p. 7). Indeed, Benchmark's Request for Production Nos. 1, 2, 6–14, 16, 17 request the same documents and information as the WHEREFORE clause of the Benchmark's complaint—to "compel" the defendants' "compliance" with their "disclosure" and "accounting" obligations under Sections 5(e)(iii) and 6(d) of the Agreement and a declaration that a "Transaction" occurred making a "Transaction Fee" due. (Doc. 1-1, p. 12). In other words, Benchmark requests the same documents, information, and an accounting that Benchmark would be entitled to if the court found in Benchmark's favor on its breach of contract claim (i.e., if the court concludes the defendants materially breached the Agreement by declining to provide Benchmark with these documents, information, and an accounting). (*See Id.*, ¶ 46).

Under New York law—which governs the Agreement (*See* Doc. 1-1, p. 23)—Benchmark's attempt to use the discovery process to obtain the ultimate relief is impermissible. *See, e.g., Macklowe v. 42nd St. Dev. Corp.*, 157 A.D.2d 566, 567 (1st Dep't 1990) ("a party may not seek, through discovery, the

6

ultimate relief sought on the merits of its action"); *1766-68 Assocs., L.P. v. City of New York*, 36 Misc. 3d 1227(A), at *4 (Sup. Ct. N.Y. Cty. 2012) (denying motion to compel where request for records was an improper "attempt[] to obtain the ultimate relief under the guise of discovery").[2]

### III.  CONCLUSION

Because Benchmark's motion to compel requests that the defendants produce documents Benchmark would be entitled to if it prevails on the merits of this action, Benchmark's motion to compel (Doc. 29) is **DENIED**.

**ORDERED** in Tampa, Florida on October 24, 2024.

*[signature]*

AMANDA ARNOLD SANSONE
United States Magistrate Judge

---

[2] Florida law is like New York law in this regard. *See, e.g.*, *Finnieston, Inc. v. Pratt*, 673 So. 2d 560, 561 (Fla. 3d DCA 1996) ("discovery as to an accounting must be deferred until the preliminary issue of the right to an accounting is settled"); *Travelers Protective Ass'n of American v. Hackett*, 438 So. 2d 1074 (Fla. 2d DCA 1983) ("discovery which amounts to obtaining the ultimate relief sought in the action is not permitted until a right to that relief has been determined").

7